■ In the Matter of JAMES JOHNSON, Petitioner, v NEW YORK CITY TRANSIT AUTHORITY, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York City Transit Authority, dated January 16, 1979, which, after a disciplinary hearing, demoted the petitioner from structure supervisor and foreman to structure maintainer. Petition granted, determination annulled, on the law, without costs or disbursements, charges dismissed and petitioner is to be restored to the position of structure supervisor and foreman with full back pay. The petitioner has been employed by the respondent New York City Transit Authority for over 15 years, and has an unblemished work record. The proceeding here arose out of charges preferred against him in connection with the events of the afternoon of November 12, 1977. The specification alleged that the petitioner had been "unfit for duty in that [he] had indulged in intoxicating beverage [sic] and [was] under its influence." A disciplinary hearing was conducted and the evidence revealed the following: On November 11, 1977 the petitioner was called upon to work a double, 16-hour, shift from midnight to 4:00 P.M. He was then told that he would be required to work another double shift the next day. It took him approximately two hours to commute to work, and therefore he arrived home at 6:00 P.M. on November 11, 1977. He remained there for four hours, and left again at 10:00 P.M. in order to arrive at work by midnight. At approximately 4:00 P.M. on November 12, 1977, as the petitioner's second double shift was drawing to a close, he was returning from one of the several emergency runs he had made that day. He was a passenger in a Transit Authority truck which was being driven by a fellow employee. Suddenly, a vehicle in heavy traffic cut in front of the truck causing a minor accident. The parties exchanged information but the police were not called and no injuries were sustained. Nevertheless, in accordance with the rules and regulations of the Transit Authority, the petitioner promptly reported the accident by telephone to Transit Authority headquarters and duly complied with its direction to note all details of the accident for the submission of a report. When the petitioner and his co-worker returned to the yard they received a direction to submit to blood alcohol tests. This order was apparently prompted solely by the fact that an accident had occurred. The petitioner complied with the direction although he had not been the driver of the vehicle. The test was conducted at approximately 7:30 P.M. It revealed .7 milligrams of alcohol per cubic centimeter in the petitioner's blood. Based upon that result, the instant charges were filed. At the hearing, the Transit Authority offered no evidence other than the results of the blood test. There was no proof that the petitioner had exhibited signs of intoxication. Indeed, there was no evidence that he had performed his duties over the two consecutive double shifts in less than a competent and professional manner. Testifying on his own behalf, the petitioner attributed the test results to the prescription medicine he had been taking every three or four hours for a persistent cough. That medicine contained alcohol, and a bottle with its prescription label attached was received in evidence. The petitioner testified that he had taken two tablespoons of the medication some two and a half hours before the blood test. He further testified that he had consumed "two scotches" during the four hours he was at home between shifts. The last of these would have preceded the test by over 21 hours. On this evidence, the hearing referee found that the charges had been proved by substantial evidence and recommended demotion with eligibility for reinstatement after

a year. Without stating a reason, the referee rejected out of hand the uncontradicted assertion that the alcohol reading was related to the medication. The review board sustained the finding of unfitness, but a majority recommended that the penalty be reduced to a 21-day suspension without pay. Ultimately, the Transit Authority adopted the findings of the referee. It demoted the petitioner but provided that he would be eligible for restoration to his supervisory title after a period of only six months. In its "Opinion and Recommendation", the review board noted that: "No one testified that Johnson appeared to be intoxicated. No one said his breath smelled of alcohol or that his speech was slurred. No one observed any stagger or imbalance in his walk. In fact, there was no proof whatsoever that he failed to do a good job on that day. The only proof against Johnson was that he tested .7 mgm/cc." Nevertheless, the board observed that "under the Rules of the Authority, anything above [a blood alcohol test reading of] .5 is considered automatic proof of intoxication. It is not considered a *presumption* of intoxication, but proof positive of that fact." The Transit Authority has now informed this court, however, that the standard referred to by the board, "while a long-standing labor relations policy of the Authority is not formally codified as part of its Rules and Regulations." Thus, there is no Transit Authority rule such as that cited and relied upon by the review board. In view of the Transit Authority's failure to promulgate its stringent "policy" in the form of a rule, we cannot permit its application against the petitioner. This is especially so since our Legislature has determined that a blood alcohol reading of .7 milligrams of alcohol per cubic centimeter, as recorded by the petitioner, is prima facie evidence that an individual is *not intoxicated* (see Vehicle and Traffic Law, § 1195, subd 2, par [b]). In any event, as respondent notes in its brief, "petitioner was charged not with intoxication, but with unfitness for duty", and we conclude that, on this record, the finding of unfitness was not sustained. Essentially, the totality of the proof showed that (1) an employee with 15 years of unblemished service was concluding the second of two consecutive double shifts without incident when he was involved as a passenger in a minor traffic accident, (2) throughout his tour he had performed his duties well and had shown no indication of intoxication, and (3) it was later discovered that his prescription medication had raised the alcohol content of his blood to a level deemed by our Legislature to be prima facie evidence that he was not intoxicated. In our view this does not constitute substantial evidence that the petitioner was either unfit for duty or under the influence of alcohol as specified in the charges. Accordingly, the determination of the Transit Authority is annulled and the petitioner is restored to his supervisory title with full back pay. Mollen, P. J., Damiani, Lazer and Mangano, JJ., concur; Martuscello, J., dissents and votes to confirm the determination and dismiss the proceeding on the merits.